UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL BAGOS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF VALLEJO, et al.,<br><br>    Defendants. | No.  2:20-cv-00185-KJM-AC<br><br><br>ORDER |

Defendants City of Vallejo ("City") and Chief of Vallejo Police Department Andrew Bidou ("Chief Bidou") (collectively "defendants") move to dismiss or strike plaintiff Angel Bagos's second cause of action and to dismiss Chief Bidou, sued in his official capacity. Mot. to Dismiss ("MTD"), ECF No. 4, at 1. Plaintiff filed an opposition to defendants' motion. Opp'n, ECF No. 7. Defendants replied. Reply, ECF No. 10. The court heard oral argument, held by videoconference in light of the novel coronavirus pandemic, on May 15, 2020, with Patrick Buelna appearing for plaintiff and John Robinson appearing for defendants. For the reasons below, the court GRANTS in part and DENIES in part defendants' motion.

1

I.     BACKGROUND

On August 24, 2019, plaintiff Angel Bagos was walking towards the entrance to Mod Pizza in Vallejo, California.  Compl. ¶ 9, ECF No. 1.  He alleges multiple City of Vallejo police officers then "suddenly and forcefully tackled [him] to the ground." *Id.* ¶ 10.  Plaintiff landed on his face, then an officer straddled him by the waist and put plaintiff's right hand behind his back.  *Id.* ¶¶ 10–12.  Plaintiff claims that once the officer forcibly moved his right hand, another, unnamed officer hit him at least ten separate times on the head with a flashlight, which led to bleeding on plaintiff's head.  *Id.* ¶¶ 13–15.  At this point, a third officer placed plaintiff in a four-leg lock and another officer dragged plaintiff to his car.  *Id.* ¶¶ 16–17.

On January 24, 2020, plaintiff filed suit.  *Id.* ¶ 1.  He names as defendants the following: the City; Chief Bidou, in his official capacity as Chief of Police of the City of Vallejo; Does 1-25, the officers involved in the alleged incident; and Does 26-50, whom plaintiff believes "is and/or are the final decision makers for the department." *Id.* ¶¶ 4–7, 20.  The individual police officers reported to Chief Bidou, who led the police department and was authorized to "make final decisions about discipline, training, supervision, and development of constitutional policing." *Id.* ¶ 5.  Through defendants' initial disclosures, plaintiff received the City's police reports and learned the identity of the individually named defendants.  Stip., ECF No. 16, at 2.  On August 26, 2020, the parties filed a stipulation requesting the court extend the deadline for plaintiff to file an amended complaint, so that plaintiff may include the identity of the Doe defendants.  *Id.*  The court GRANTS the parties' stipulation to extend the deadline for plaintiff to file an amended complaint.

Plaintiff brings six claims against defendants: (1) violation of the Fourth and Fourteenth Amendment rights to be free from the use of unreasonable force under 42 U.S.C. § 1983, as against the Doe defendants, Compl. ¶¶ 27–31; (2) municipal liability for unconstitutional custom or policy under *Monell*, as against Chief Bidou, the City, and Doe defendants, *id.* ¶¶ 32–43; (3) intentional infliction of emotional distress, as against the Doe defendants, *id.* ¶¶ 44–46; (4) assault and battery, as against the Doe defendants, *id.* ¶¶ 47–48; (5) negligence, as against the City and Doe defendants, *id.* ¶¶ 49–52; and (6) violation of

California's Bane Act for threats, intimidation and coercion with plaintiff's state and federal constitutional rights, as against the City and Doe defendants, *id.* ¶¶ 53–58. As noted, defendants mere challenge only plaintiff's second claim: municipal liability for unconstitutional custom or policy under *Monell*. MTD at 1.

II.   LEGAL STANDARD

   A.   Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

3

judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B.     Motion to Strike

Federal Rule of Civil Procedure 12(f) provides "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[, and] [i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07, 711 (1990)), *rev'd on other grounds by* 510 U.S. 517 (2004).

A 12(f) motion to strike serves "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). The granting of a motion to strike "may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Taheny v. Wells Fargo Bank, N.A.*, No. 10-2123, 2011 WL 1466944, at *2 (E.D. Cal. Apr. 18, 2011) (citing *Fantasy*, 984 F.2d at 1527–28). However, "[m]otions to strike are disfavored and infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citations omitted). Indeed, a motion to strike "'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Id.* (quoting *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)); *see also Wynes v. Kaiser*

4

1     *Permanente Hospitals*, No. 10–00702, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 31, 2011)

2     (noting "courts often require a showing of prejudice by the moving party").

3             In ruling on a motion to strike, a "court[] may not resolve disputed and substantial

4     factual or legal issues . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.

5     2010) (internal quotation omitted). Finally, "leave to amend should be freely given" unless there

6     is a showing of prejudice to the moving party. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824,

7     826–27 (9th Cir. 1979) (citing Fed. R. Civ. P. 15(a)) (other citations omitted).

8     III.      <u>DISCUSSION</u>

9             In their motion to dismiss, defendants make the following arguments: (1) plaintiff

10    has failed to state a municipal liability claim under *Monell* because he did not allege prior

11    incidents that are sufficiently similar, MTD at 4, 7–11; and (2) plaintiff's suit against Chief

12    Bidou, in his official capacity, is redundant because plaintiff also has brought suit against the

13    agency employing Chief Bidou, *id.* at 4, 11. As the court and the parties discussed at hearing,

14    defendants did not comply with the court's standing order requiring parties to meet and confer

15    prior to filing motions to dismiss. *See generally* Hr'g Minutes, ECF No. 12; *see also* Opp'n at 2–

16    3; Declaration of Melissa Nold (Nold Decl.), ECF No. 7-1 (independent contractor for plaintiff's

17    counsel describing communications with defense counsel regarding responsive motion).

18    Ultimately, while reenforcing the importance of meet and confer, the court accepted defendants'

19    justification at hearing and analyzes defendants' motion on the merits below.

20         A.      <u>Unconstitutional Custom or Policy (Second Cause of Action): City of Vallejo</u>

21            Defendants assert plaintiff has failed to state a claim for relief because the

22    incidents plaintiff describes to demonstrate an unconstitutional custom or policy are "dissimilar

23    events," which are not a "proper basis" for *Monell* liability. MTD at 7. While plaintiff did not

24    address these arguments in their written opposition, plaintiff fully responded to defendants'

25    statements at hearing, without objection from the defense. Opp'n at 2–3.

26            Section 1983 provides that "[e]very person who, under color of [law] . . . subjects,

27    or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or

28    immunities secured by the Constitution and the laws, shall be liable to the party injured . . . ."

42 U.S.C. § 1983. Under this section, municipalities and other local governments are considered "persons." *Monell*, 436 U.S. at 690.

Under *Monell*, municipalities "are responsible only for their own illegal acts," *Connick v. Thompson*, 536 U.S. 51, 60 (2011) (emphasis in original) (citations, internal quotation marks omitted). "They are not vicariously liable . . . for their employees' actions." *Id.* (citations omitted). To successfully establish *Monell* liability, a plaintiff must show "'(1) that [he or she] possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 536 U.S. at 61 (citations omitted).

Prior to the Supreme Court decisions in *Twombly* and *Iqbal*, a claim for county liability could "withstand a motion to dismiss 'even if . . . based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (citing *Shah v. Cty. of L.A. Intelligence & Coordination Unit*, 797 F.2d 743, 747 (9th Cir. 1986)). In light of *Twombly* and *Iqbal*, the Ninth Circuit now has articulated a two-part rule to govern evaluation of allegations in a complaint or counterclaim:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012). Thus, the court considers a motion to dismiss a claim of municipal liability under a more heightened pleading standard than in the past. *See*

6

*Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) ("*Iqbal* has made clear that conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss . . . . In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable.").

Here, plaintiff alleges a *Monell* claim against the City, a "person" for purposes of Section 1983, based on two theories. First, he alleges the City's failure to adequately hire, train or supervise police officers reveals an unconstitutional custom or practice of using excessive force. Compl. ¶ 40 ("Plaintiff is informed and believes and thereon alleges that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training and supervision of the Defendants and/or DOES 26-50 in his/her capacity as police officers for the CITY."); *see also id.* ¶¶ 34, 41–42. Second, he alleges ratification of the unconstitutional policy or custom by a final policy-making official. *Id.* ¶ 37 ("Plaintiff is informed and believes and thereon alleges that Defendants and DOES 26-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the failure to adequately supervise officers."); *see also id.* ¶¶ 35–36, 38. Plaintiff also identifies which constitutional rights defendants allegedly violated: (1) "[t]he right to be free from unconstitutional searches and seizures" under the Fourth Amendment; (2) "[t]he right not to be deprived of life or liberty without due process of law" under the Fourteenth Amendment; and (3) "[t]he right to equal protection of the laws" under the Fourteenth Amendment. *Id.* ¶ 42. The court discusses below whether plaintiff's complaint contains sufficient allegations of underlying facts to plausibly suggest an entitlement to relief under both theories of *Monell* liability.

          1.      <u>Failure to Hire, Train or Supervise</u>

Defendants maintain plaintiff fails to state a municipal liability claim based on inadequate training and supervision of police officers. MTD at 4, 7–11. Defendants contend the other incidents involving the City, which plaintiff relies on for his *Monell* claim, "do not bear sufficient resemblance to the fact pattern at issue here" and therefore do not demonstrate deliberate indifference. *Id.* at 8. At hearing plaintiff argued he has sufficiently pleaded factual allegations of similar events to plausibly state a *Monell* claim.

7

To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to "deliberate indifference" to a constitutional right. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). For example, if police activities in arresting fleeing felons "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers," then the city's failure to train may constitute "deliberate indifference." *Id.* at 390 n.10. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. And only under such circumstances does the failure to train constitute "a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390.

Here, plaintiff alleges 23 prior incidents for which City of Vallejo officials who did not face discipline or retraining following an allegedly unconstitutional action, and says these incidents show an "entrenched culture and posture of deliberate indifference toward protecting citizen's rights." Compl. ¶ 21. These prior incidents generally involve allegations of either excessive force or deadly force, with some bearing more similarities to the incident here than others, as explained below. *Id.* With these allegations, plaintiff does more than "simply recite the elements of a cause of action" and instead "plausibly suggests an entitlement to relief." *Starr*, 652 F.3d at 1216. Defendants characterize the prior incidents as "unsubstantiated allegations of various misconduct" because many of them settled without "a finding or admission of liability or of misconduct," one led to a defense outcome at trial, and the remainder "are either still being contested, and/or are not in litigation yet." MTD at 5. But the results of these previous cases are not necessarily relevant at this point. "At this stage, 'Plaintiff's explanation need not be true or even probable,' rather '[t]he factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *McCoy v. City of Vallejo*, No. 2:19-cv-001191-JAM-CKD, 2020 WL 374356, at *3 (E.D. Cal. Jan. 23, 2020) (quoting *Starr*, 652 F.3d at

1217) (additional citations omitted) (holding six previous incidents, which also involved officer shootings, were sufficiently similar to the officer-involved shooting allegations before court). Prior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss. *McCoy*, 2020 WL 374356, at *3. It is only in the summary judgment phase, which "is concerned with the evidence or absence of evidence supporting the nonmoving party's case," when a previous lawsuit alone would not be sufficient support to prove deliberate indifference. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Gillam v. City of Vallejo*, No. 2:14-CV-2217-KJM-KJN PS, 2016 WL 4059184 (E.D. Cal. May 27, 2016) (holding lawsuits alone do not demonstrate *Monell* liability at summary judgment phase)). As an initial matter, the number of incidents plaintiff pleads supports a claim "of an official policy, entrenched culture, and posture of deliberate indifference toward protecting citizens' rights," plausibly suggesting an entitlement to relief under *Monell*. Compl. ¶ 21.

The court next turns to defendants' argument that plaintiff has pleaded "dissimilar events," which are "not a proper basis for *Monell* liability." MTD at 7. Specifically, defendants in their briefing argue 17 of the previous incidents are "factually distinct" from the alleged events here because they involve one of the following: allegations of deadly force, "interactions with mentally-ill subjects," racial profiling and sexual assault, removal from a vehicle and prone restraint, comments by a City official, or First Amendment violations. *Id.* at 8–10. Defendants argue *McCoy* is "instructive." MTD at 10. On this point, the court agrees. In *McCoy*, plaintiffs were the siblings of a 20-year old who was shot 55 times while he was unconscious in his vehicle. *McCoy*, 2020 WL 374356, at *1. Plaintiffs provided the court with 21 prior incidents of other events, but which defendants argued involved "markedly different facts." *Id.* at *4. The court found six of the incidents involving officer shootings were "just as factually pertinent to the facts at hand to survive a motion to dismiss." *Id.*

Applying the reasoning of *McCoy* to this case, the court finds defendants are partially correct; thirteen of the alleged prior incidents are not sufficiently similar to carry any

weight in the *Monell* analysis here as explained below. That leaves, however, ten incidents that are sufficiently similar, and that is enough to withstand the motion to dismiss.

As defendants note, the prior events plaintiff describes in paragraphs 21 (a)–(d), (j), (o), and (s) are "factually distinct from the subject incident because they concern allegations of deadly force," which involves standards and training distinct from the use of force otherwise. Mot. at 8–9 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985) (describing standard for deadly force); *Bryan v. Macpherson*, 630 F.3d 805 (9th Cir. 2010) (describing characteristics of non-lethal force)); Compl. ¶ 21. The same holds true for the allegations in paragraphs 21(p) and (q), which involved profiling and sexual assault, two scenarios with standards and training also distinct from excessive force. Mot. at 10; Compl. ¶ 21. And also for the allegations in paragraphs 21(k) and (r), "involve[ing] First Amendment violations when an officer allegedly interfered with a subject's ability to film officers on a cell phone." Mot. at 10; Compl. ¶ 21. To obviate "confusion of the issues," the court will strike the allegations in these paragraphs. *Taheny*, 2011 WL 1466944, at *2

In paragraphs 21(v) and (w), plaintiff alleges the City Manager made comments at public meetings regarding the Police Department, in which he acknowledged his responsibilities over the Police Department and disagreed with the characterization of certain incidents as involving excessive force; these allegations have the potential to support the pleading of the City's deliberate indifference to constitutional violations by the Police Department. *See* Compl. ¶ 21. While the statements themselves are not prior incidents of excessive force, they bear some connection to plaintiff's general claims of an "official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights." *Id.* As the court discusses below, plaintiff also ties allegations against the City Manager to his claim based on the ratification theory of liability. The paragraphs involving statements by the City Manager would benefit from greater particularity in any amended complaint, but the court will not strike them given they could have some "possible bearing on the subject matter of the litigation," *Neveau*, 392 F. Supp. 2d at 1170, even if they belong in the ratification section of any amended complaint.

Defendants' attack on the other alleged incidents does not persuade the court. The events alleged in paragraphs 21(g) and 21(m), involving excessive force against mentally-ill persons, may bear on the "subject matter of the litigation here" because those incidents involve allegations regarding excessive force, the same level of force alleged here. Mot. at 9; Compl. ¶ 21. The same can be said of the incident involving law enforcement's alleged use of prone restraint and removal from a vehicle in paragraph 21(t). Mot. at 10; Compl. ¶ 21. Regarding paragraph 21(e) and the case of a Jon Connolly, who alleged the City's police officers used excessive force against him, defendants point to the defense verdict at trial, arguing Mr. Connolly's case "cannot logically support Plaintiffs' assertions of unreasonable force." Mot. at 9–10. As pled, the prior incident involving a plaintiff who was thrown to the ground and suffered broken bones as alleged in Paragraph 21(e), serves to "exhibit [] a pattern and practice of using excessive force" with "none of the officers [. . . .] ever found in violation of department policy, even under the most questionable circumstances." Compl. ¶ 21. Even though Mr. Connolly's case resulted in a defense verdict, this incident could serve as an example of "questionable circumstances" in which the officers still were not "found in violation of department policy." As noted previously, "[p]laintiff's explanation [need not] be true or even probable" at this stage, and thus Paragraph 21(e) allows plaintiff to "plausibly suggest an entitlement to relief." *Starr*, 652 F.3d at 1217 (additional citations omitted); *see also McCoy*, 2020 WL 374356, at *3 (reasoning cases that have not resulted in an admission by defense or plaintiff's verdict can satisfy pleading standards at motion to dismiss phase, rather than summary judgment phase).

Defendants acknowledge the prior incidents alleged in paragraphs 21(f), (h), (i), (l), (n) and (u), which all center on allegations of excessive force, "could theoretically bear similarity to the [sic] at hand here (e.g. alleged Fourth Amendment-related arrest/use-of-force, officer allegedly use of flight or baton, alleged unlawful arrest)." Mot. at 11. The court agrees. With these, plaintiff has pled the ten sufficiently similar prior incidents. Collectively, these prior incidents are sufficient to state a plausible claim for relief under the failure to train theory of *Monell* liability.

/////

The court DENIES defendants' motion to dismiss plaintiff's claim of *Monell* liability based on a failure to train, GRANTS defendants' motion to strike Paragraphs 21 (a)–(d), (j), (p), (q), (o), and (s), and DENIES defendants' motion to strike Paragraphs 21 (v) and (w). Any amended complaint should reflect this order.

### 2. Ratification by Final Policy Maker

A plaintiff may claim *Monell* liability where an "official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Furthermore, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Ratification "and thus the existence of a de facto policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (emphasis in original) (citing *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)). The elements of ratification include the act of approval, and that the ratification was (1) the cause in fact, and (2) the proximate cause of the constitutional deprivation. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

As explained below, plaintiff fails to allege a final policymaker and a conscious choice by that final policymaker to demonstrate knowledge of the constitutional violations.

#### a) Final Policymaker

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

12

Here, plaintiff has not at this point alleged a final policymaker by name. Instead, plaintiff pleads, "Defendants and DOES 26-50 […] approved, ratified, condoned, encouraged and/or tacitly authorized" the failure to adequately hire, train, and supervise police officers "that engage in actions contrary to state law, federal law, and department policy." Compl. ¶ 35. Plaintiff does allege City Manager Greg Nyhoff spoke at two meetings, say in conclusory fashion that at one meeting he "publicly ratified the department's infamous history of violence" and in another that "the buck stops with me." *Id.* ¶ 21. Although plaintiff also identifies "high ranking CITY officials, including […] Chief ANDREW BIDOU" as "the final decision makers for the police department" and alleges City Manager Nyhoff was someone who "ratified" the department's unconstitutional violations, these allegations also are conclusory. *Id.* ¶ 36. Plaintiff has not pleaded who was, "as a matter of state law, a final policymaking authority and whose edicts or acts may fairly be said to represent official policy in the area of decision." *J.M. by and Through Rodriguez v. Cty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *3 (E.D. Cal. 2018) (citing *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)); *compare* Compl. ¶¶ 20, 35–38 *with Larez v. City of Los Angeles*, 946 F.2d 630, 633, 646 (9th Cir. 1991) (observing from record that the chief of police was "an official policymaker for the City on police matters").

The court finds plaintiff has not sufficiently pleaded a final policymaker as required. With the new information he has now obtained, or otherwise, he may be able to however.

b)   Ratification of Basis for Actions

A plaintiff must also plead that a final policymaker both "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346-47. Ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Id.* at 1347. For example, in *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1053 (9th Cir. 2013), the plaintiff alleged the chief of police delayed a salary increase for plaintiff in retaliation for plaintiff's exercising his First Amendment rights. The Ninth Circuit concluded the city manager, not the chief of police, "was the city's final policymaker," where the manager approved the police

chief's decision to delay. *Id.* at 1066. Plaintiff had not alleged the city manager "knew that the decision was in retaliation for protected speech" or that the city manager "ratified the decision despite such knowledge." *Id.*

Here as well, plaintiff's allegations are mere legal conclusions. They do not plausibly state a final policymaker's approval or ratification involving a "conscious, affirmative choice" and knowledge of the excessive force used by the individual officers. *See Gillette*, 979 F.2d at 1347. Plaintiff's broad allegations that Chief Bidou and the Doe defendants "publicly and openly deny the existence of any ongoing and system violence and/or unlawful conduct," to such an extent that they "criticize" media outlets for reporting otherwise, Compl. ¶ 38, are not sufficient to plead a "conscious, affirmative choice." For purposes of pleading *Monell* liability under a ratification theory, in which plaintiff need only allege one example of a constitutional violation, these allegations do not plausibly state a claim for relief. *See Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).

The court GRANTS defendants' motion to dismiss plaintiff's claim for *Monell* liability under a ratification theory, but with leave to amend if possible subject to Federal Rule of Civil Procedure 11.

B.  Unconstitutional Custom or Policy (Second Cause of Action): Chief Bidou

In their motion to dismiss, defendants contend the court should dismiss all claims against Chief Bidou because plaintiff sued him in his official capacity, while also suing the City. MTD at 8. Naming both Chief Bidou and the City in the suit, according to defendants, is "redundant." *Id.*; *see also Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.") (affirming district court dismissal of Sheriff Baca when plaintiff brought suit against the Los Angeles County Sheriff Department as well) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). At hearing plaintiff conceded this question and agreed to dismiss his claims against Chief Bidou.

Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's claims against Chief Bidou in his official capacity, without leave to amend. The court hereby DISMISSES Chief Bidou from this action.

IV. CONCLUSION

For the reasons above, the court orders as follows:

1. The court DENIES defendants' motion to dismiss plaintiff's claim of *Monell* liability under a failure to train theory;
2. The court GRANTS defendants' motion to strike Paragraphs 21 (a)–(d), (j), (p), (q), (o), and (s);
3. The court DENIES defendants' motion to strike Paragraphs 21 (v) and (w);
4. The court GRANTS defendants' motion to dismiss plaintiff's claim of *Monell* liability under a ratification theory;
5. The court GRANTS defendants' motion to dismiss Chief Bidou in his official capacity, and Chief Bidou is hereby DISMISSED; and
6. The court GRANTS the parties' stipulation for leave to file an amended complaint, with amendment consistent with this order.

Any amended complaint shall be filed within twenty-one (21) days of the date this order is filed. This order resolves ECF Nos. 4 and 16.

IT IS SO ORDERED.

DATED: October 13, 2020.

CHIEF UNITED STATES DISTRICT JUDGE